David E. McCraw
Nabiha Syed (admission pending)
Legal Department
The New York Times Company
620 8th Avenue – 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
mccraw@nytimes.com
Counsel for Plaintiffs

11 CIV 9336



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

THE NEW YORK TIMES COMPANY,
CHARLIE SAVAGE, and SCOTT SHANE,

                    Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF
JUSTICE,

                    Defendant.

---------------------------------------X

No. _____

COMPLAINT

ECF CASE

        Plaintiffs The New York Times Company, Charlie Savage, and Scott Shane (jointly, "NYT"), by their undersigned attorney, allege for their Complaint:

        1.       This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, *et seq.*, seeking the production of agency records improperly withheld by Defendant United States Department of Justice ("DOJ") in response to requests properly made by Plaintiffs.

        2.       Questions surrounding the legality of targeted killing – especially the extrajudicial use of lethal force away from any so-called "hot" battlefield where United

States forces are engaged in active combat – have generated extensive public debate since October 2001, when the Bush Administration first contemplated whether covert lethal force could be used against people deemed to be al-Qaeda operatives.

3. Most recently, the death of an American citizen, Anwar al-Awlaki, who was killed in a drone strike in Yemen in September, has kindled widespread interest in – and controversy over – the scope of the circumstances in which it is lawful for government officials to employ targeted killing as a policy tool.

4. Given the questions surrounding the legality of the practice under both U.S. and international law, notable legal scholars, human rights activists, and current and former government officials have called for the government to disclose its legal analysis justifying the use of targeted lethal force, especially as it applies to American citizens.

5. For example, the former legal adviser to the United States Department of State in the Bush administration, John B. Bellinger III, has argued that it is "important to domestic audiences and international audiences for the Administration to explain how the targeting and killing of an American complies with applicable constitutional standards."

6. To date, the government has not offered a thorough and transparent legal analysis of the issue of targeted killing. Instead, several government officials have made statements broadly asserting the legality of such actions in a conclusory fashion.

7. Upon information and belief, there exists at least one legal memorandum detailing the legal analysis justifying the government's use of targeted killing.

8. In a Feb. 11, 2011, article about targeted killing operations by the Central Intelligence Agency, *Newsweek* quoted an anonymous government official as saying such actions were "governed by legal guidance provided by the Department of Justice."

9. On September 30, 2011, the *Washington Post* reported that the government had produced a "secret memorandum authorizing the legal targeting" of Anwar al-Awlaki, an American citizen who had been killed earlier that day in Yemen.

10. On October 8, 2011, *The New York Times* published an article that described some details about the context and contents of the Awlaki memorandum.

11. Both before and after the death of al-Awlaki, NYT duly filed FOIA requests seeking memoranda that detail the legal analysis behind the government's use of targeted lethal force. To date, DOJ has refused to release any such memoranda or any segregable portions, claiming them to be properly classified and privileged and in respect to certain memoranda has declined to say whether they in fact exist.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§552(a)(4)(B) and 28 U.S.C. §1331.

13. Venue is premised on the place of business of Plaintiffs and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

14. Because DOJ has failed to determine either of the two pending administrative appeals in the time set by FOIA, NYT is deemed to have exhausted all administrative remedies as to each and is now entitled to appeal directly to the Court to enforce the dictates of FOIA pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

15. Plaintiff The New York Times Company is the publisher of *The New York Times*. The weekday circulation of *The New York Times* is the highest in the nation among metropolitan dailies, at more than 900,000 daily, with 1.35 million on Sunday. The average number of monthly unique visitors to NYTimes.com has exceeded 20 million.

16. The New York Times Company is headquartered in this judicial district at 620 Eighth Avenue, New York, N.Y.

17. Plaintiff Charlie Savage is a reporter for *The New York Times*.

18. Plaintiff Scott Shane is a reporter for *The New York Times*.

19. Defendant DOJ is an agency of the federal government that has possession and control of the records sought by Plaintiffs' FOIL requests.

20. DOJ is the federal agency responsible for enforcing the law and defending the legal interests of the United States. The Office of Information Policy ("OIP"), a component entity of DOJ, is responsible for ensuring the agency's compliance with FOIA requests. The Office of Legal Counsel ("OLC"), a component entity of DOJ, assists the Attorney General in his function as legal adviser to the President and all executive branch agencies.

21. DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTS

*The Memoranda Underlying The Times's FOIA Requests*

22. A central issue in the debate over targeted killings has been the scope of the government's legal authority to use force against American citizens when officials have deemed them to be terrorists.

23. On February 3, 2010, Director of National Intelligence Dennis C. Blair testified to the House Permanent Select Committee on Intelligence that "we take direct actions against terrorists in the intelligence community. If we think that direct action will involve killing an American citizen, we get specific permission to do that."

24. A number of senators, representatives, and government officials – including both supporters and opponents of the practice – have since urged the Department of Justice to make public its legal justification for the targeted killing of individuals.

25. For example, on October 2, 2011, Jane Harman, a former United States representative and a former ranking member of the House Intelligence Committee, argued that "targeted killing of anyone should give us pause, and there has to be a legal framework around doing that. Reports say there is a lengthy memo that the Office of Legal Counsel and the Department of Justice has prepared making the case. I believe there is a good case. But I think the Justice Department should release that memo."

26. Similarly, on October 7, 2011, Senator Dianne Feinstein, chairwoman of the Senate Select Committee on Intelligence, called on the administration to "make public its legal analysis on its counterterrorism authorities" because "for transparency and to maintain public support of secret operations, it is important to explain the general framework for counterterrorism actions."

27. Senator Carl Levin, chairman of the Senate Armed Services Committee, has said: "I would urge them to release the memo. I don't see any reason why they shouldn't."

28. Other officials have complained that much of the publicly available information on targeted killing results from off-the-record comments by government officials

reported in the media. As a former United States representative and a former chairman of the House Select Committee on Intelligence, Peter Hoekstra, has noted: "The targeting of Americans – it is a very sensitive issue, but again there's been more information in the public domain than what has been shared with this committee. There is no clarity. Where is the legal framework?"

29. Former attorneys for the OLC have also recommended the release of memoranda detailing the legality of targeted killing.

30. Jack Goldsmith, a former assistant attorney general who headed the OLC, has argued that "a legal analysis of the U.S. ability to target and kill enemy combatants (including U.S. citizens) outside Afghanistan can be disclosed without revealing means or methods of intelligence-gathering or jeopardizing technical covertness. The public legal explanation need not say anything about the means of fire (e.g. drones or something else), or particular countries, or which agencies of the U.S. government are involved, or the intelligence basis for the attacks… A full legal analysis, as opposed to conclusory explanations in government speeches and leaks, would permit a robust debate about targeted killings – especially of U.S. citizens – that is troubling to many people."

31. Only extremely limited legal analysis has been made available by government officials with knowledge of the program.

32. For example, in a speech on March 10, 2010, Harold Koh, legal adviser of the United States Department of State, assured members of the American Society of International Law that "it is the considered view of this administration – and it has certainly been in my experience during my time as legal adviser – that U.S. targeting

practices, including lethal operations conducted with the use of unmanned aerial vehicles, comply with all applicable law, including the laws of war."

33. On September 16, 2011, John O. Brennan, a senior adviser to President Obama on homeland security and counterterrorism, provided similar reassurance: "We will uphold the core values that define us as Americans, and that includes adhering to the rule of law. And when I say 'all our actions,' that includes covert actions, which we undertake under the authorities provided to us by Congress. President Obama has directed that all our actions – even when conducted out of public view – remain consistent with our laws and values."

34. Upon information and belief, there exists at least one official OLC memorandum that details the legal argument justifying targeted killing.

35. On September 30, 2011, the *Washington Post* described a Department of Justice "secret memorandum authorizing the legal targeting" of al-Awlaki, an American citizen accused of coordinating the Al-Qaeda operations in the Arabian peninsula. The article said that officials refused to disclose the exact legal analysis" such as "how they considered any Fifth Amendment right to due process." It also quoted a "former senior intelligence official" as saying the C.I.A. "would not have killed an American without such a written opinion."

36. On October 8, 2011, *The New York Times* published an article that described the memorandum in greater detail, including the rough timeframe and bureaucratic background in which it had been produced and an outline of some of its legal reasoning.

*Mr. Shane's FOIA Request for Memoranda Related to Targeted Killing*

37. On June 11, 2010, Mr. Shane had submitted a FOIA request to DOJ OLC seeking a copy of "all Office of Legal Counsel opinions or memoranda since 2001 that address the legal status of targeted killings, assassination, or killing of people suspected of ties to Al-Qaeda or other terrorist groups by employees or contractors of the United States government."

38. By letter dated October 27, 2011, DOJ OLC denied Mr. Shane's request.

39. The DOJ OLC responded that "insofar as your request pertains to the Department of Defense," all responsive records were being withheld pursuant to FOIA Exemption 1, § 552(b)(1) (relating to national defense or foreign policy information properly classified pursuant to Executive Order No. 13526), FOIA Exemption 3, § 552(b)(3) (relating to information protected from disclosure by statute), and Exemption 5 (§ 552(b)(5) (relating to information that is privileged).

40. The DOJ OLC also stated that, to the extent the request sought documents pertaining to other government agencies, it "neither confirms nor denies the existence of the documents described in your request," pursuant to FOIA Exemption 1, Exemption 3, and Exemption 5.

41. On November 4, 2011, NYT submitted to DOJ OIP its appeal of the denial of Mr. Shane's request.

42. More than twenty days have passed since NYT submitted its November 4, 2011 administrative appeal to DOJ OIP. NYT has received no further response to its appeal.

43. As a result, NYT is deemed to have exhausted its administrative remedies with regard to Mr. Shane's request.

*Mr. Savage's FOIA Request for Memoranda Related to Targeted Killing*

44. On October 7, 2011, Mr. Savage submitted a FOIA request DOJ OLC seeking a copy of "all Office of Legal Counsel memorandums analyzing the circumstances under which it would be lawful for United States armed forces or intelligence community assets to target for killing a United States citizen who is deemed to be a terrorist."

45. By letter dated October 27, 2011, on the same day Mr. Shane was sent his denial letter, DOJ OLC also denied Mr. Savage's request.

46. DOJ OLC stated that it "neither confirms nor denies the existence of the documents described in your request," pursuant to FOIA Exemption 1, § 552(b)(1) (relating to national defense or foreign policy information properly classified pursuant to Executive Order No. 13526), FOIA Exemption 3, § 552(b)(3) (relating to information protected from disclosure by statute), and Exemption 5 (§ 552(b)(5) (relating to information that is privileged).

47. On November 4, 2011, NYT submitted to DOJ OIP its appeal of the denial of NYT's request. DOJ OIP adjudicates such appeals, including those made to DOJ OLC.

48. More than twenty days have passed since NYT submitted its November 4, 2011 administrative appeal to DOJ OIP. NYT has received no further response to its appeal.

49.     As a result, NYT is deemed to have exhausted its administrative remedies with regard to Mr. Savage's request.

## CAUSE OF ACTION

50.     NYT repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

51.     DOJ, as an agency subject to FOIA, 5 U.S.C. § 552(f), must release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it is claiming an exemption under 5 U.S.C. § 552(a)(3).

52.     Upon information and belief, DOJ has possession of memoranda setting forth the government's analysis of the legality of targeted lethal force, including its use on American citizens.

53.     Defendant has improperly withheld the memoranda under FOIA.

54.     Memoranda containing legal analysis relied upon by the government constitute a final determination of policy by the government and therefore are not deliberative materials and not properly subject to Exemption 5.

55.     Memoranda containing only legal analysis fail to meet the requirements for properly classified materials under Executive Order No. 13526 or other legal authority, and therefore Exemptions 1 and 3 do not apply.

56.     Even if parts of the memoranda are properly classified or otherwise subject to an exemption, DOJ has an obligation to redact non-public portions of the memoranda and release those portions that are public under FOIA.

57. Defendant's failure to provide the memoranda violates FOIA.

## REQUEST FOR RELIEF

**WHEREFORE**, NYT respectfully requests that this Court:

a. Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b. Declare that the memoranda requested by NYT are public under 5 U.S.C. § 552 and must be disclosed or, in the alternative, conduct an in camera review to determine whether any parts of the memoranda are properly public under FOIA;

c. Order the DOJ to provide the memoranda, or such parts as the Court determines are public under FOIA, to NYT within twenty business days of this Court's order;

d. Award NYT its costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

  e.  Grant NYT such other and further relief as the Court deems just and proper.

Dated: New York, New York
    December 20, 2011

*[signature]*

David E. McCraw
Nabiha Syed (admission pending)
Legal Department
The New York Times Company
620 8th Avenue – 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
mccraw@nytimes.com
Counsel for Plaintiffs