UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, et al.,<br><br>              Plaintiffs,<br><br>       v.<br><br>DEPARTMENT OF JUSTICE,<br><br><br>              Defendant. | Civil Action No. 11-9336 |
| AMERICAN CIVIL LIBERTIES UNION, et al.,<br><br>              Plaintiffs,<br><br>       v.<br><br>DEPARTMENT OF JUSTICE, et al.,<br><br>              Defendants. | Civil Action No. 12-0794 |

**DECLARATION OF JOHN F. HACKETT,
CHIEF OF THE INFORMATION AND DATA MANAGEMENT GROUP,
THE OFFICE OF THE CHIEF INFORMATION OFFICER,
OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,**

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare the following to be true and correct:

1.  I am the Chief of the Information and Data Management Group for the Office of the Director of National Intelligence

("ODNI").  I have held this position since April 2006.  Prior to my arrival in the ODNI, I held similar positions in the National Counterterrorism Center and its predecessor, the Terrorist Threat Integration Center.  In this capacity I am the final decision-making authority for the ODNI Information and Data Management Group, which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.  In addition, I have TOP SECRET original classification authority delegated to me by the Director of National Intelligence ("DNI") pursuant to Section 1.3 of Executive Order 13526.  I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions.

3.  I make the statements herein on the basis of my personal knowledge as well as on information made available to me in the course of performing my official duties.

A.  ODNI Background

4.  Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title I of the National Security Act of 1947).  Subject to the authority, direction, and control of the President, the DNI serves as the

2

head of the United States Intelligence Community and as the
principal advisor to the President and the National Security
Council for intelligence matters related to the national
security.  50 U.S.C. §§ 403(b)(1), (2).

5.  The responsibilities and authorities of the DNI are set
forth in the National Security Act of 1947, as amended.  These
responsibilities include ensuring that national intelligence is
provided to the President, heads of the departments and agencies
of the Executive Branch, the Chairman of the Joint Chiefs of
Staff and senior military commanders, and the Senate and House
of Representatives and committees thereof, and to such other
persons as the DNI determines to be appropriate.  50 U.S.C. §
403-1(a)(1).  The DNI is charged with establishing the
objectives of; determining the requirements and priorities for;
and managing and directing the tasking, collection, analysis,
production, and dissemination of national intelligence by
elements of the Intelligence Community.  50 U.S.C. §§ 403-
1(f)(1)(A)(i) and (ii).

6.  In addition, the National Security Act of 1947, as
amended, states that "[t]he Director of National Intelligence
shall protect intelligence sources and methods from unauthorized
disclosure."  50 U.S.C. § 403-1(i)(1).  Consistent with this
responsibility, the DNI is authorized to establish and implement
guidelines for the Intelligence Community for the classification

3

of information under applicable law, Executive Orders, or other
Presidential Directives and for access to and dissemination of
intelligence.  50 U.S.C. §§ 403-(i)(2)(A), (B).

7.  Finally, the National Security Act of 1947, as amended,
created an Office of the Director of National Intelligence.  The
function of this Office is to assist the DNI in carrying out the
duties and responsibilities of the Director under the Act and
other applicable provision of law, and to carry out such other
duties as may be prescribed by the President or by law.  50
U.S.C. §§ 403-3(a),(b).

### B.  Plaintiffs' FOIA requests

8.  I am submitting this declaration in support of the
Government's motion for summary judgment in these proceedings.
Through the course of my official duties I have become familiar
with these civil actions and the underlying FOIA requests.
Although ODNI is not a defendant in this case, due to the
nature of the information at issue and the fact that the
relevant components of DOJ do not have officials who are
original classifying authorities, I will be addressing the
Department of Justice's (DOJ) handling of the classified records
it located in response to the FOIA requests described below to
the extent possible in a public unclassified document.  The
court is respectfully referred to the classified ex parte

4

declarations also being filed today for a more detailed discussion of these matters.

9.   I understand that on or about June 11, 2010, New York Times reporter Scott Shane submitted a FOIA request to DOJ's Office of Legal Counsel (OLC) seeking "[a]ll Office of Legal Counsel opinions or memoranda since 2001 that address the legal status of targeted killing, assassination, or killing of people suspected of ties to Al Qaeda or other terrorist groups by employees or contractors of the United States government.  This would include legal advice on these topics to the military, the Central Intelligence Agency or other intelligence agencies.  It would include the legal status of killing with missiles fired from drone aircraft or any other means."  In response OLC acknowledged the existence of one responsive classified legal memorandum pertaining to the Department of Defense but advised that it could not confirm or deny the existence of any additional responsive documents pursuant to FOIA Exemptions 1 and 3 (a "Glomar" response).

10.   I am also aware that on or about October 7, 2011, New York Times reporter Charlie Savage submitted a FOIA request to OLC for "[a]ll Office of Legal Counsel memorandums analyzing the circumstances under which it would be lawful for the United State armed forces or intelligence community assets to target for killing a United States citizen who is deemed a terrorist."

OLC interpreted the request as seeking records pertaining to
Anwar al-Aulaqi and provided a Glomar response pursuant to FOIA
Exemptions 1 and 3.

11.  I am aware that on or about October 19, 2011 plaintiff
American Civil Liberties Union Foundation (ACLU) submitted a
FOIA request to OLC seeking all records "pertaining to the legal
basis in domestic, foreign, and international law upon which
U.S. citizens can be subjected to targeted killings" and "the
process by which U.S. citizens can be designated for targeted
killings, including who is authorized to make such
determinations and what evidence is needed to support them," as
well as a variety of records related to three individuals
alleged to have been targeted, Anwar al-Aulaqi, Samir Khan, and
Abdulrahman al-Aulaqi.  OLC responded to the ACLU with a Glomar
response pursuant to FOIA Exemptions 1 and 3.  (The
administrative processing of the ACLU and New York Times
requests is further described in the unclassified declaration of
John E. Bies, Deputy Assistant Attorney General, OLC, which also
attaches the relevant correspondence.)

12.  On or about October 19, 2011 DOJ's Office of
Information Policy (OIP)received the same request from the ACLU
described above.  OIP did not provide a response to this request
prior to the filing of this lawsuit but has since completed the
processing of this request.  (The administrative processing of

6

this request is further described in the declaration of Douglas R. Hibbard, Deputy Chief of the Initial Request Staff, OIP, DOJ, which also attaches the relevant correspondence.)

13. While OLC previously provided a Glomar response to these requests there have been a number of developments that have resulted in a determination that OLC and OIP can now publicly acknowledge that they possess documents responsive to the ACLU FOIA request. However, as will be explained further below, OLC and OIP cannot provide further information about those records, including the number, nature, or a categorization of the responsive records, without disclosing information protected by FOIA Exemptions 1 and 3.

14. In addition, I have reviewed the content of the documents located by DOJ and have determined that they contain information that is currently and properly classified and/or consists of intelligence sources and methods information and is therefore exempt from disclosure pursuant to FOIA Exemptions 1 and 3.

C.  FOIA Exemption 1

15. Exemption 1 of the FOIA protects from release matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order. 5 U.S.C. 552(b)(1).

7

The current Executive Order, which establishes such criteria, is Executive Order 13526.

16.   Section 1.1 of Executive Order 13526 provides that information may be originally classified under the terms of the order if: 1) an original classification authority is classifying the information; 2) the information is owned by, produced by or for, or is under the control of the U.S. Government; 3) the information falls within one or more of the categories of information listed in section 1.4 of the Executive Order; and 4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage.

17.   Section 1.2(a) of Executive Order 13526 provides that information shall be classified at one of three levels. Information shall be classified at the Top Secret level if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security. Information shall be classified at the Secret level if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.  Information shall be classified at the Confidential level if its unauthorized

disclosure reasonably could be expected to cause damage to the national security.

18.  In addition, information shall not be considered for classification unless it falls within one of the categories described in Section 1.4 of Executive Order 13526.  The relevant categoreis for purposes of this case are Sections 1.4(c) and 1.4(d).  Section 1.4(c) allows information to be classified if it pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptology." Section 1.4(d) allows information to be classified if it pertains to "foreign relations or foreign activities of the United States, including confidential sources."

### D.  FOIA Exemption 3

19.  Exemption 3 of the FOIA provides that FOIA does not apply to matters that are specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).

20.  Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1) states that the "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  The sources

9

and methods provision of the National Security Act has long been held to qualify as an Exemption 3 statute.  In contrast to information witheld pursuant to Exemption 1, agencies are not required to identify and describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of these sources and methods.  Agencies are only required to establish that the withheld information constitutes intelligence sources and methods.

### E.  DOJ's "No Number/No List" response

21.  I have reviewed the classified records located by DOJ in response to the ACLU's FOIA request, as well as the other unclassified and classified ex parte declarations being submitted in support of the Government's motion for summary judgment.  In light of the U.S. Government's recent official disclosures in the speeches given by the Attorney General on March 5, 2012 and the Assistant to the President for Homeland Security and Counterterrorism on April 30, 2012 the defendants in this case can now publicly confirm the existence of records responsive to ACLU's request without harming national security. However,  given the subject matter of the ACLU's request, which includes, among other things, a request for records pertaining to "the legal basis . . . upon which U.S. citizens can be subjected to targeted killings," DOJ cannot provide any details about the records that were located, including the volume, dates

10

or nature of those records.  Although DOJ can confirm generally

the existence of records relating to the broad topics addressed

in the ACLU's request, including records related to the Attorney

General's speech which addressed legal issues pertaining to the

potential use of lethal force against U.S. citizens, any further

disclosure related to the classified records located by DOJ

would harm national security and should be protected pursuant to

FOIA Exemptions 1 and 3.

        22.  To provide detailed information about the volume and

nature of the classified documents located by DOJ would reveal

classified information about the nature and extent of the U.S.

Government's classified counterterrorism activities.  DOJ also

cannot disclose whether or not the responsive records they

located correlate to the specific subparts of the ACLU's

request.  Providing such details would tend to reveal the very

information that is being protected in this case.  This

information constitutes currently and properly classified

information concerning intelligence sources, methods and

activities, as well as information related to the foreign

activities of the United States.  Disclosure of this information

reasonably could be expected to result in damage to the national

security, up to and including exceptionally grave damage, and is

therefore properly protected from disclosure pursuant to FOIA

Exemption 1.  This information also consists of intelligence

sources and methods that is protected by the National Security
Act and therefore exempt from disclosure pursuant to FOIA
Exemption 3.

23.  As described in the declaration of John Bennett,
Director of the National Clandestine Service of the CIA, the CIA
is similarly unable to provide further information about the
number and nature of the records it located because such
information would reveal information about intelligence
activities, intelligence methods, and CIA functions.  Were the
CIA to publicly acknowledge that it possessed a significant
number of documents responsive to the ACLU's FOIA request, that
would indicate CIA interest in either actual or contemplated
operations against U.S. citizens who are senior operational
leaders of al-Qaeda, which in turn would reveal CIA involvement
in these activitites or that the CIA itself has authority to use
lethal force against such individuals.  On the other hand, if
CIA acknowledged that it did not have any documents, that would
reveal a lack of interest or authority.

24.  Similarly, were DOJ to acknowledge that it located a
large volume of classified records responsive to the ACLU
request, that would tend to indicate that an entity of the U.S.
Government was involved in the lethal targeting activities that
are the subject of the request, since if a U.S. Government
entity had been granted the authority to carry out lethal

12

operations against U.S. citizens it would be logical that the
legal issues related to such operations would be extensively
documented.  Again, on the other hand, a small amount of
material would indicate that no authority had been granted, or
possibly that the issue had not been raised with DOJ and
therefore was not being considered.  In particular, whether or
not OLC has a large number of responsive documents would also
indicate whether or not OLC has provided formal written advice
regarding the subjects of the request.  This, in turn, would
tend to reveal whether or not the U.S. government was
contemplating certain actions, because OLC generally provides
legal opinions only when there is some practical need for the
advice.  *See* Memorandum for Attorneys of the Office from David
J. Barron, *Re:  Best Practices for OLC Legal Advice and Written
Opinions*, at 3, available at http://www.justice.gov/olc/pdf/olc-
legal-advice-opinions.pdf ("OLC generally avoids providing a
general survey of an area of law or issuing broad, abstract
legal opinions.  There should [] be a practical need for [a]
written opinion.").  Information revealing the depth and breadth
of the U.S. Government's efforts to counter the threat posed by
U.S. citizens who are senior operational leaders of al-Qaeda, as
well as public confirmation that the U.S. Government was
involved in the circumstances that led to the deaths of Anwar
al-Aulaqi, Samir Khan and Abdulrahamn al-Aulaqi, would greatly

13

benefit terrorist organizations and other foreign adversaries both in operationally responding to U.S. counterterrorism activities as well as in recruiting new terrorists into their ranks.

25. The unclassified CIA declaration submitted today details the CIA's concerns with the potential disclosure of the volume and nature of the CIA records that were located in this matter, including the potential harm to intelligence source relationships, intelligence methods, intelligence activities, and the foreign relations and foreign activities of the United States.  All of those concerns are equally applicable to the records located by DOJ and I hereby incorporate by reference the Bennett declaration.  To publicly disclose the volume of classified records DOJ located in response to the various sections of the ACLU's request would reveal information about the existence and identity of intelligence sources, possibly including liaison services in the region (or lack of such sources).  For example, the existence of a signficant amount of information related to the "facts supporting a belief that al-Awlaki could not be captured or brought to justice using nonlethal means" would reveal that CIA had been successful in collecting information, while an assertion that there is no information on this topic would reveal the opposite.

26.   The ACLU's request also implicates intelligence
methods and activities which must be protected in order to
prevent terrorist organizations or foreign adversaries from
taking countermeasures to avoid those methods.  We know that
terrorist organizations have the capacity and ability to gather
information from a variety of sources and analyze it in order to
ascertain the means and methods of foreign intelligence
collection efforts aimed at disrupting their activities.
Disclosing the amount and character of the classified
information DOJ located in response to various sections of the
ACLU's request would reveal details about the U.S. Government's
counterterrorism efforts and its success or lack of success in
gathering intelligence information related to the matters
addressed in the ACLU request.

27.   The ACLU's request also clearly implicates the foreign
relations and foreign activities of the United States.  For
example, to confirm that DOJ has a significant amount of
classified records relating to "the legal basis . . . upon which
U.S. citizens can be subjected to targeted killings, whether
using unmanned aerial vehicles. . .or by other means" or
relating to "the process by which U.S. citizens can be
designated for targeted killing" could confirm that an agency of
the U.S. Government has requested advice on this topic and is
intending to engage in such activities.  Such confirmation could

cause harm to U.S. relations with foreign governments with known or suspected U.S. citizen terrorists within their borders. Furthermore, any confirmation regarding whether the U.S. Government was involved in the deaths of the individuals named in the FOIA request could harm U.S. foreign relations by potentially disclosing whether the U.S. is operating clandestinely inside other countries' borders, which could cause those countries to respond in ways that could harm U.S. national interests.

28. Finally, if all of the defendants in this matter -- DOJ, CIA and the Department of Defense -- were to provide the volume, dates, authors and other information about the classified records located which is typically included in agency Vaughn indexes, our adversaries would have significant information about U.S. Government counterterrorism activities in recent years at their fingertips. The indexes could reveal that a particular agency had a significant interest in one of the individuals named in the request at a particular time. This would provide a timeline of counterterrorism and military activities that would be extremely valuable information to terrorists as they work to assess U.S. Government interests and capabilities.

F.   The records responsive to the
ACLU and New York Times requests

29. I have reviewed the records located by DOJ, including

the one OLC opinion related to the Department of Defense that

DOJ has confirmed the existence of, and I have determined that

they contain information that is exempt from disclosure pursuant

to FOIA Exemptions 1 and 3.   Although I am unable to provide

detailed information about the records located by DOJ, including

the dates, subject and authors, I can state that they contain

information that is currently and properly classified pursuant

to Executive Order 13526 at the Secret and Top Secret levels.   I

have also determined that the records contain intelligence

sources and methods information that falls squarely within the

scope of Section 102A(i)(1) of the National Security Act, as

amended, 50 U.S.C. § 403-1(i)(1), which protects intelligence

sources and methods from disclosure.   Although the statute does

not require an agency to identify and describe the harm to

national security, the disclosure of the intelligence sources

and methods contained in these documents could reasonably be

expected to cause serious and exceptionally grave damage to the

national security.   Disclosure of this information is prohibited

by statute; having reviewed the material, I find it to be

properly exempt from disclosure pursuant to Exemption 3 of the

FOIA.   For more detailed justifications for the withholding of

the classified information contained in the documents located by DOJ pursuant to Exemptions 1 and 3 I respectfully refer the court to the classified ex parte declarations submitted herewith.

30.   In reviewing DOJ's invocation of FOIA Exemptions 1 and 3 and its Glomar response and for the reasons stated herein and in the attached classified declarations, I have determined that DOJ's withholdings have not been made to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. See Executive Order 13526, Sec. 1.7.

31.   Finally, ODNI and other Intelligence Community employee names, phone numbers and email addresses are contained in the unclassified records located by DOJ.  These names, phone numbers and email addresses are exempt from release pursuant to FOIA Exemption 6, which protects information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  Given the nature of their work ODNI and Intelligence Community employees have a heightened privacy interest that far outweighs the minimal public interest in their

identities and email addresses.

## Conclusion

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 20ᵗʰ day of June, 2012.

John F. Hackett
Chief, Information and Data Management Group
Office of the Director of National Intelligence