UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION and THE )
AMERICAN CIVIL LIBERTIES UNION FOUNDATION )
)
Plaintiffs, )
) 12 Civ. 794 (CM)
v. )
)
U.S. DEPARTMENT OF JUSTICE, including its )
component the Office of Legal Counsel, )
U.S. DEPARTMENT OF DEFENSE, including its )
component U.S. Special Operations Command, )
and CENTRAL INTELLIGENCE AGENCY, )
)
Defendants. )

---

## DECLARATION OF MARK H. HERRINGTON

Pursuant to 28 U.S.C. § 1746, I, Mark H. Herrington, hereby declare under penalty of perjury that the following is true and correct:

1. I am an Associate Deputy General Counsel in the Office of General Counsel ("OGC") (Office of Litigation Counsel) of the United States Department of Defense ("DoD"). OGC provides legal advice to the Secretary of Defense and other leaders within the DoD. I am responsible for, among other things, overseeing Freedom of Information Act ("FOIA") litigation involving DoD. I have held my current position since March 2007.

2. My duties include coordinating searches across DoD to ensure thoroughness, reasonableness, and consistency. By reviewing each component's efforts and search results, I am able to determine potential inadequacies of the components' searches. I routinely request that components conduct further searches to provide the most diligent search and production possible from DoD as a whole.

3. The statements in this declaration are based upon my personal knowledge and upon my review of information available to me in my official capacity.

4. I am familiar with the FOIA request, dated October 19, 2011, which plaintiffs sent to the DoD Office of Freedom of Information (OFOI) and Headquarters, United States Special Operations Command (SOCOM) seeking 1) the legal basis upon which U.S. citizens can be subjected to "targeted killings," 2) the process by which U.S. citizens can be designated for "targeted killing," 3) the legal basis "upon which the targeted killing of Anwar al-Awlaki was authorized," 4) the "factual basis for the targeted killing of al-Awlaki," 5) the factual basis for the killing of "Samir Khan," and 6) the factual basis for the killing of "Abdulrahman al-Awlaki." The request was also sent to the Department of Justice and its component Office of Legal Counsel (OLC), and the Central Intelligence Agency (CIA).

5. My involvement in the searches for and production of DoD records commenced after plaintiffs filed their complaint on February 1, 2012.

## PURPOSE OF DECLARATION

6. This declaration is intended to supplement the unclassified declaration of Lieutenant General Robert R. Neller, dated June 20, 2012, which provided basic information regarding the DoD search for records responsive to Plaintiffs' request and detailed the basis for withholding the unclassified documents located in that search.

7. In Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, they argue that the DoD search was insufficiently described because "the Neller Declaration does not, however, provide any information on the databases and electronic systems searched or how they were selected, does not list all the search terms used, and does not describe how the DOD determined which paper documents to search." Plaintiffs further complain that "DOD and the

two DOJ components also do not indicate whether they used any code names in searching for responsive records."

8. Given DoD's "No Number, No List" response with regard to classified documents located in the search for responsive records, there are limitations as to how much detail can be provided regarding that search. For instance, for the same reasons described in paragraph 26 of Lt. Gen. Neller's declaration, if DoD were to indicate, either affirmatively or negatively, whether "code names" were used in conducting the search, such indication would itself reveal classified information about the nature and extent of DoD's interest in the subjects of Plaintiffs' request. That information could reveal the nature, depth, or breadth of DoD's operational activities. Therefore, I will provide additional details regarding the DoD search, but must limit those details to avoid revealing classified information.

## DOD'S SEARCH FOR DOCUMENTS

9. As stated in Lt. Gen. Neller's declaration, I coordinated a search of the DoD offices that I determined were likely to have documents responsive to Plaintiffs' request, based upon discussions with DoD personnel familiar with the subject matter of the request. I determined that the offices likely to have such information included the DoD Office of the General Counsel, the Joint Staff, United States Special Operations Command (SOCOM), and United States Central Command (CENTCOM).

10. I directed that each of the relevant offices search for records, and ensured they had copies of the plaintiffs' complaint and original request and that they searched for records dated between September 11, 2001, and the date they initiated their search.

11. The multiple DoD components, and their subcomponents, conducted a thorough and reasonable search for all responsive documents, including all levels of classification, hard-

copy and electronic records, and email correspondence. In devising and conducting searches, DoD staff relies on their knowledge of what is in the relevant files, as well as consultations with identified custodians of potentially responsive records, and continually refines search parameters to ensure a search reasonably calculated to locate responsive records. In light of the direct participation in the searches by persons with familiarity with the subject matter, I have confidence that their searches would in fact turn up the records that had been requested. I will describe each search in turn.

### DoD Office of the General Counsel

12. The Office of DOD GC advises the Secretary and Deputy Secretary of Defense (OSD) regarding all legal matters and services performed within, or involving, DoD, and provides legal advice to OSD organizations and, as appropriate, other DoD components. To complete its mission DOD GC is divided into multiple offices. The full list of duties and responsibilities of DOD GC offices can be viewed at http://www.dod.mil/dodgc/index.html.

13. After consulting other DOD GC attorneys, I determined that the offices likely to possess responsive records were the Front Office, Legal Counsel, International Affairs, and Intelligence. These four offices conducted extensive searches of paper files, emails, and electronic records for all responsive documents regardless of their classification. Electronic searches included individual computer hard drives, individual drives stored on a server, and shared drives which are accessible by multiple attorneys within each office. The searches were conducted by attorneys familiar with the subject matter of Plaintiffs' request and the electronic searches included the use of relevant search terms, such as "Citizen," "US Citizen," "U.S. Citizen," "AG Speech," "Aulaqi," "Awlaki," and "Khan". Ultimately, as attorneys familiar

with the subject matter would know best how any responsive materials would be stored, they used their discretion in conducting the search of both electronic and paper files.

### Office of the Chairman of the Joint Chiefs of Staff

14. The Joint Staff conducted extensive searches of paper files, emails, and electronic records for all responsive documents regardless of their classification. Electronic searches included individual computer hard drives, individual drives stored on a server, and shared drives. The searches were conducted by personnel familiar with the subject matter and included the use of relevant search terms, including "US Citizen," "U.S. Citizen," "AG Speech," "Awlaki," "Aulaqi," and "Khan". Again, personnel familiar with the subject matter knew best how any responsive materials would be stored and used their discretion in conducting the search of both electronic and paper files.

### United States Special Operations Command

15. Based upon my request, SOCOM searched relevant offices at SOCOM itself and relevant offices for the subcomponents, including Navy, Air Force, Marine Corps, Army, and Joint Special Operations Commands. The searches included physical searches of their paper records and electronic searches of emails and shared drives. The searches included all levels of classification. The searches were conducted by personnel familiar with the subject matter of Plaintiffs' request and included the use of relevant search terms, such as "US Citizen(s)," "UAV," "Target," and the names of the individuals, including the spelling "Awlaki."

### United States Central Command

16. Based upon my request, USCENTCOM directed that appropriate offices search for records responsive to Plaintiffs' FOIA request using relevant search terms, including "targeted killing," "U.S. civilian killings," "AMCIT," "USPER," and "citizen," and the names

of the individuals mentioned in the request, using the spelling "Awlaki." In additional to individuals with knowledge of the subject matter conducting searches, a paralegal in the CENTCOM Staff Judge Advocate's Office searched the "P" drives, which are shared drives on a local server (both classified and unclassified); SharePoint Portals, which are shared drives on the classified internet system for the legal office; and the tasking management tool, which is used to assign taskings to other directorates.

### Alternate Spellings of Awlaki

17. When searching for records pertaining to Anwar al-Awlaki, the components used either "Awlaki" or "Aulaqi," and in some instances both. While Defendants have used the spelling "Aulaki" in their motion for summary judgment, I have consulted with the relevant records custodians and "Aulaki" is not a spelling that DoD commonly uses and would be unlikely to yield any different results. To reinforce this fact, Joint Staff recently searched an electronic document repository on a classified network, and found no responsive documents using the spelling "Aulaki." As I mentioned above, in light of the direct participation in the searches by persons with familiarity with the subject matter, I have confidence that their searches would in fact turn up the records that had been requested.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and information.

Executed this 8th day of August 2012 in Washington, D.C.

MARK H. HERRINGTON, ESQ.