UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THE NEW YORK TIMES COMPANY,
CHARLIE SAVAGE, and SCOTT SHANE

                           Plaintiffs,                     11 Civ. 9336 (CM)

        -against-

UNITED STATES DEPARTMENT OF JUSTICE,

                           Defendant.

-----------------------------------------------------------------x
AMERICAN CIVIL LIBERTIES UNION and
THE AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                           Plaintiffs,                     12 Civ. 794 (CM)

        -against-

U.S. DEPARTMENT OF JUSTICE, including its
component the Office of Legal Counsel, U.S.
DEPARTMENT OF DEFENSE, including its
Component U.S. Special Operations Command,
and CENTRAL INTELLIGENCE AGENCY,

                           Defendants.

-----------------------------------------------------------------x

### *REVISED* DECISION ON REMAND WITH RESPECT TO ISSUE (3)

McMahon, J.:

        (U) The court has received mandates in connection with two separate remand

orders from the Second Circuit.

        (U) The first mandate requires me to review in camera certain "other legal

memoranda prepared by OLC" that were identified as responsive to the Shane and

Savage FOIA requests. That review is for the purpose of ascertaining whether the

Government has waived the protection of asserted FOIA Exemptions for those

documents, for the reasons announced in the Circuit's opinion (originally issued in redacted form on April 21, 2014 and reissued, in final redacted form, on June 23, 2014). If I decide that the FOIA Exemptions have been waived, I am to make appropriate redactions prior to authorizing disclosure. (Item 3 Remand).

(U) The second mandates requires me to review new Vaughn Indices from the Department of Defense (DOD) and Central Intelligence Agency (CIA), in order to determine appropriate disclosures and redactions in the indices (Item 5 Remand).

(U) This opinion addresses the Item 3 Remand only.

<u>Discussion</u>

(U) The court has been provided with a total of ten legal memoranda prepared by attorneys in OLC. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ I have also been provided with a copy of an email covering a November 2011 draft of a Department of Justice White Paper (Bies Ex. L).

(U) OLC, supported by the CIA, asserts that Exemptions 1 (Classified Material); 3 (Intelligence Sources and Methods); and 5 (Deliberative/Attorney-Client Privilege) apply to each of the ten legal memoranda, and insist that these exemptions were not waived under the reasoning of the Second Circuit's decision, for various reasons, most of which they urge in connection with all ten memoranda. The reader should assume that I have considered all three possible exemptions in making the determinations outlined below.





### BIES EXHIBITS F, G, H, I and J

(U) Five of the memoranda ███████████ – Bies Exhibits F, G, H, I and J – need not be disclosed in whole or in part because as to them there has been no waiver of any privilege or any exemption.

███ *For the reasons stated in this court's Classified Appendix dated January 22, 2013,* ██████████████████████ *and there has been no waiver of any privilege or any exemption relating thereto by virtue of the Administration's public statements or its disclosure of the Draft White Paper. The Second Circuit agreed with this Court's conclusion, and took great pains to redact any reference*

(U) I have reviewed these five documents after reading █████████ ███████████████ and ascertained that it would be impossible to redact these memoranda in any way that would not prevent the disclosure of highly classified information. They need not be disclosed.

## BIES EXHIBITS A, B AND K

(U) *Exhibits B and K*: Bies Exhibits B, which is responsive to both FOIA requests, is a memorandum prepared by OLC six months prior to its preparation of the OLC-DoD memorandum and the Draft White Paper. It pertains specifically to the proposed al-Aulaqi operation that was the subject of the Draft White Paper and the OLC-DoD Memorandum. Written by David J. Barron, it is entitled "Lethal Operation Against Shaykh Anwar Aulaqi." I will refer to it hereafter either as Bies Exhibit B or as "The First Barron Memorandum."

██████████████████████ *Bies Exhibit B contains certain intelligence information relating to Aulaqi and includes both strategic and legal analysis relating to the proposed operation. No privilege has been waived as to the factual intelligence information or the strategic analysis. Similarly, no privilege has been waived insofar as the document contains* ████████████████████████████ *for the reasons discussed in the preceding section, no such information can or should be disclosed.*

(U) Section VI of the OLC-DoD Memorandum, insofar as it has been disclosed by order of the Second Circuit, discusses legal analysis taken from Bies Exhibit B concerning (1) the constitutionality of the proposed al-Aulaqi operation due to T his American citizenship, and (2) whether the proposed operation would run afoul of Executive Order 12333, which contains the so-called "assassination ban." Plainly, the OLC-DoD Memorandum not only relies on, but incorporates by reference, the legal analysis of Fourth and Fifth Amendment that is contained in Bies Exhibit B; as a matter of fact, the version of the OLC-DoD Memorandum that is appended to the Second

Circuit's final redacted opinion openly refers to the "Barron Memorandum" (also referred to as "our earlier Memorandum") in at least one place (see p. 38). Similarly, the Draft White Paper (whose release, in the context of the Public Statements, caused the protection of the asserted FOIA exemptions to be waived, according to the Second Circuit) adverts to the legal arguments made in Bies Exhibit B – although, as one would expect with a white paper, it does not specifically identify Bies Exhibit B, or for that matter any source material on which it relies.

(U) The Government argues that the privilege has not been waived with regard to Bies Exhibit B – even though it and its contents are specifically referenced in documents already disclosed – because (1) the date, title and recipient of the analysis provided in the document relate to "entirely separate deliberative processes," and (2) "neither the draft white paper nor the public statements relied on by the Second Circuit refer to or otherwise disclose" its contents." *(Bies Decl. at 37, referencing 19).[1]*

(U) The Government's arguments are demonstrably untrue. There were no "separate deliberative processes" here; rather, the Government deliberated about whether or not it could and should kill al-Aulaqi over the course of many months, during which time it asked OLC to render advice on a number of occasions. There is no way to square the Government's argument that privileges still attach to Bies Exhibit B consistent with the Second Circuit's reasoning when (1) both it and the OLC-DoD Memorandum were prepared (by the same person, no less) to answer legal questions posed during



deliberations over the proposed al-Aulaqi operation, and (2) the latter document not only references the former but expressly incorporates its legal analysis. Notably, the draft white paper also describes the Fourth and Fifth Amendment analysis that appears in Bies Exhibit B as well as the OLC-DoD Memorandum. *See* DOJ White Paper, Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who is a Senior Operational Leader of Al-Qa'ida or an Associated Force (bearing NBC News Stamps), no date, at II.

(U) No doubt recognizing the weakness of its argument against disclosing Bies Exhibit B, the Government has also presented the court with a redacted version of the First Barron Memorandum (Bies Exhibit K), which it either intends to disclose or has already disclosed (I cannot tell from Mr. Bies' Declaration; Ms. Lutz's Declaration seems to suggest that Exhibit K is already in the public domain).

(U) I have reviewed Bies Exhibit K against Bies Exhibit B. Exhibit K redacts every reference that this court would have ordered in order to avoid disclosure of information as to which the protection of the asserted FOIA exemptions still exists.

(U) However, Exhibit K also redacts additional information from Bies Exhibit B; in order to assess the appropriateness of those redactions, █████████████████









(U) The issue raised by the Government's objection to disclosure is potentially fascinating and incredibly complicated. In the regular course of the practice of law, attorneys opine ████████████████████ Waiver of attorney-client privilege as to a memorandum to Client A discussing, say, the legality of a non-compete clause in an employment contract would never be held to waive the privilege in a memo from the same lawyer ████████████████████ addressed to Client B. Nor is it likely that the waiver would extend to a ███████████ memorandum from the same lawyer (or from another lawyer at her firm) addressed to Client A, but prepared at a different time and concerning an entirely different employee.

(U) On the other hand, if an attorney writes a memo addressed to Client A that says, "As to the legality of the non-compete clause, please refer to our memorandum of last year addressing that issue," deciding whether a waiver of privilege in this year's memorandum also waives any privilege attaching to last year's memorandum becomes trickier. Furthermore, the answer to that question may differ depending on whether last year's memorandum is merely referenced in, but not attached to, this year's memorandum – or whether this year's memorandum includes a "cut and paste" of last year's legal advice (*as if frequently the case with OLC legal opinions*).

(U) Yet another issue is presented when the two memoranda prepared for Client A were prepared in the course of handling a single matter.

9



(U) The Government's blithe assertion to the contrary, these waiver issues are not so easily resolved



(U) The two (and only two) precedents the Government cites are not, in my opinion, entirely apposite or particularly persuasive. The privilege question is further complicated by the peculiarities attendant to the work of the OLC, which responds to unique legal questions and has developed its own research library consisting of prior opinions  Wrestling with this thorny issue would require weeks of comprehensive analysis of its endless permutations.





(U) The Court of Appeals ruled only that the privilege had been waived as to

legal analysis. *New York Times Company v. United States*, 756 F.3d 100, 117, 120 (2d

Cir. 2014). It repeatedly rejected any contention that the protections of FOIA Exemptions

1, 3 and 5 had been waived as to operational details (other than the identity of the agency

that took out al-Aulaqi and the country from which that operation was launched, both of

which had been made public by the Administration), or other intelligence information





(U) I will, therefore, not order OLC to disclose any portion of Bies Exhibit A, and I will permit OLC to redact the references to Bies Exhibit A that have been made in Bies Exhibit K.[2]

(U) The redacted version of Bies Exhibit B, however, must be disclosed, because the test of waiver contained in *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) is met: the legal analysis in Bies Exhibit B is "as specific as" the information in the draft white paper and the already-disclosed OLC-DoD Memorandum; it "matches" the legal analysis previously disclosed; and the information was made public through an official and documented disclosure (the release of the draft white paper).  Accordingly, I direct that Bies Exhibit K, the redacted version of Bies Exhibit B, be disclosed forthwith if it has not already been disclosed.

**BIES EXHIBIT C**



If that be true, I see no reason why I am even going through this exercise.







**BIES EXHIBIT E**



 (U) Executive Order 12333 is mentioned in the draft white paper, which asserts

that an operation against a U.S. citizen "would not violate the assassination ban in

Executive Order No. 12333" because "a lawful killing in self-defense is not an

assassination," (Draft White Paper at 15, Sec. III). The Second Circuit did not redact the

one brief mention of Executive Order 12333 that appears in the OLC-DoD Memorandum

(in a footnote on page 14) when it ordered that document disclosed, and exactly the same

words that appear in the draft white paper appear in Bies Exhibit B, which I have ordered

disclosed in the form of Bies Exhibit K. One can easily infer (and I do so infer) that the

preparers of the draft white paper and Barron (who authored both Bies Exhibit B/K and

the OLC-DoD Memorandum) had access to and incorporated arguments from Bies Exhibit E in reaching the conclusion that the killing of al-Aulaqi would not qualify as an assassination.

(U) The question is whether these disclosures waive the protection of any applicable FOIA exemption for this document.

(U) I conclude that there has been no waiver with regard to Bies Exhibit E, because this exhibit does not meet the conditions of the *Wilson* test. As all three prongs are necessary, it requires only a discussion of the second prong to eliminate any claim that the protections of the FOIA exemptions have been waived by virtue of the disclosures relied on by the Second Circuit.

(U) The legal analysis in Bies Exhibit E does not "match" the analysis disclosed in the draft white paper (and in the two documents that have been or will be disclosed by order of the court), which is the second prong of the Wilson test.



████████████ *however, that aspect of Bies Exhibit E does not correspond to any legal analysis (or, for that matter, factual analysis) in either the draft white paper and the two Barron memoranda that are or soon will be in the public domain.*



    (U) As a result, there is no "match" as required by *Wilson*, and hence no waiver of the protections of the relevant FOIA exemptions.

## BIES EXHIBIT L

(U) Also attached to the Bies memorandum is a twelfth exhibit, Exhibit L, which is a November 8, 2011 draft of the white paper that eventually found its way to NBC News, following which the Government made what Mr. Bies refers to as "discretionary release [of the white paper]...in light of the media report." Bies attaches this memorandum to his affidavit principally so that he can make a record addressing a question asked by the Second Circuit about the discretionary release of the white paper. (Bies Dec. ¶ 82 et seq.). These portions of Bies' Declaration are unclassified. The matters discussed therein do not relate in the slightest particular to my mandate, so I am ignoring them.





## Conclusion

(U) This constitutes the decision and order of the court. Before releasing this decision to plaintiffs and to the public, I am providing a copy to the Government, to check classification status (which we have tried our best to get right on a paragraph by paragraph basis) and to propose redactions.

(U) To the extent it should be necessary, the court certifies that an immediate entry of partial judgment as to this aspect of the case would be appropriate, pursuant to Fed. R. Civ. P. 54(b), because (1) this order finally disposes of a discrete and severable issue in this action, to wit: the disclosability of one specific type of legal document (legal opinions from the OLC) sought from one party defendant (the Department of Justice); and (2) there is no just reason for delay. These FOIA requests were made nearly three years ago, and it is in the public interest that any disclosable documents become public as without further delay. Also, there are many open issues in this case, which are completely severable from Remand Issue 3; and (if the parties' briefing schedule is any indication) it will take many months to resolve those issues.

(U) The mandate directs that any appeal from this order and the partial judgment to be entered thereon be referred to a panel consisting of Judges Newman, Cabranes and Pooler.

May 11, 2016[4]

_____

United States District Judge

_____

[4] This decision amends the Court's decision of September 30, 2014, as ordered by the Second Circuit Court of Appeals. *See New York Times v. U.S. Dep't of Justice*, 806 F.3d 682, 690 (2d Cir. 2015), Mandate Issued on April 21, 2016.